UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/31/2015
```

------------------------------------------------------------X

MARTIN K. POST,                                      :

                        Plaintiff,          :

                                   :

             -against-                           :          1:13-cv-8500-GHW

                                   :

CAROLYN W. COLVIN, Acting                            :          MEMORANDUM
Commissioner of Social Security,                     :          OPINION AND ORDER

                                 :

                     Defendant.   :

------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

     Martin K. Post brought this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying him disability insurance benefits. Compl., Dkt. No 1. On January 14, 2015, Post moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Pl.'s Mot.") Dkt. No. 22. On February 6, 2015, the Commissioner filed a cross-motion for judgment on the pleadings. Dkt. No. 27. On March 2, 2015, Post filed his reply. Dkt. No. 31. For the reasons set forth below, Post's motion for judgment on the pleadings is DENIED and the Commissioner's cross-motion is GRANTED.

## I.   FACTS

### A.   Procedural Background

     On February 9, 2008, Post filed an application for disability insurance benefits. R. 290-98, 120.[1] Post's claim alleged an inability to work as of December 31, 2014 due to bilateral shoulder, neck and back pain. *Id.* When his claim was initially denied, Post requested and received a hearing before an Administrative Law Judge ("ALJ"). R. 133-37, 143-44. On August 24, 2009, ALJ Dennis

---

[1] "R." is a reference to the numbered pages of the certified transcript of the administrative record that was filed by the Commissioner. Dkt. No. 6.

Katz issued a decision finding that Post was not disabled under the Social Security Act.  R. 117-27.

On February 26, 2010, the Appeals Council vacated that decision and remanded the matter for

further development of the administrative record.  R. 128-31.  During the December 18, 2010

hearing, Post claimed mental illness as an additional basis for disability.  R. 14.  After multiple

supplemental hearings, on June 23, 2011, ALJ Katz again issued a decision finding that Post was not

disabled.  R. 11-27.

After the Appeals Council denied Post's request for review of that decision, Post

commenced a civil action in front of Judge Cathy Seibel of the United States District Court for the

Southern District of New York, under the caption *Post v. Astrue*, 12-cv-5228-CS.  R. 1-4, 932-33.

The parties subsequently stipulated to a remand, which was so-ordered by Judge Seibel on

November 19, 2012.  R. 934-36.  By order dated January 15, 2013, the Appeals Council vacated ALJ

Katz's June 23, 2011 decision and remanded the case for further proceedings before a new ALJ.  R.

939-42.  After multiple hearings, ALJ Robert Gonzalez issued an unfavorable decision on July 29,

2013, which became the final decision of the Commissioner.  R. 835-53.  This action followed.

### B.  Non-Medical Evidence

Post was born in August 1951.  R. 290, 348.  From 1988 through 2004, he worked as a

police officer and then police sergeant for the town of Blooming Groove, New York.  R. 344, 948.

He tore his left rotator cuff while working in August 2003.  R. 359.  He allegedly became unable to

work on December 31, 2004, despite having shoulder surgery on October 31, 2003, because the left

rotator cuff injury reduced his strength and range of motion in the left upper extremity.  R. 33-34,

343.  Post testified that he received Vicodin and trigger point injections for pain, Lidoderm patches

to control shoulder spasms, and Cymbalta for depression.  R. 31-33.  After his workplace accident in

2003, the police department placed Post on light duty, which involved processing paperwork.  R. 91.

Post was let go on December 31, 2004 because the police department would not create a permanent

light duty position for him.  R 91-92.  Post reported that he was able to do light household chores and yard work and watch television.  R. 352-55.  He also reported that he sometimes drove, went shopping for groceries, and prepared his own meals.  R. 353-55.  Post testified that his physical pain was so severe and continuous that it prevented him from working and concentrating on simple tasks.  *See, e.g.*, R. 20-23.

### C.  Medical Evidence

#### 1.  Dr. Charles Episalla

On October 31, 2003, Dr. Charles Episalla performed a left shoulder open reconstruction on Post.  R. 453-54, 508-09.  During a June 2006 examination of his cervical spine, Dr. Episalla found Post had a decreased range of motion with significant pain and discomfort.  R. 604.  On May 25, 2007, Dr. Episalla performed a right open shoulder reconstruction and manipulation for a right rotator cuff tear.  R. 587-88.  In June 2007, Dr. Episalla opined that Post could not perform any significant activity with the left upper extremity, and no heavy lifting, overhead activity, or pushing or pulling with the left upper extremity that would involve tension to the neck.  R. 583.

From January 2009 through April 2009, Dr. Episalla found decreased sensation in Post's hands and wrists with decreased grip strength bilaterally.  R. 565, 670-71, 678-79, 683.  In June and July 2010, Dr. Episalla found that Post had protracted shoulders, head flexed forward posture, increased tenderness and muscle tension in the left upper trapezius, and bilateral shoulder impingement signs.  R. 712-13, 714-15.  But Dr. Episalla also found that Post had full neck flexion and extension, full right and left cervical rotation, and fairly full range of motion in both shoulders, with intact strength and sensation, intact reflexes, and no atrophy in the bilateral upper extremities. *Id.*  From January 2011 to April 2012, Post reported to Dr. Episalla that he was managing his left shoulder pain, which was sometimes intermittent and other times chronic, with medication.  R. 771, 765, 761, 1203, 1197, 1195, 1193, 1185, 1183, 1181.  During the course of his treatment, Dr. Episalla

diagnosed Post with status-post left shoulder reconstruction, cervical spine injury with herniated disc, shoulder impingement syndrome, spasm of muscle, cervicalgia, sprain of neck, and bilateral carpal tunnel syndrome.  R. 583, 688, 703, 764, 679.  For purposes of Post's workers' compensation claim, Dr. Episalla opined that Post was partially disabled from 2004 to mid-2007, and totally disabled since then. *See, e.g.*, R. 497, 564, 583, 850.

### 2.  Dr. Steve Weinstein

Dr. Episalla recommended that Post see his colleague, Dr. Steven Weinstein, a pain management specialist.  R. 679.  From February through November 2010, Post told Dr. Weinstein that he had lasting relief after trigger point injections, but complained of spasms and/or tenderness in his left neck and upper back.  R. 698-99, 700-01, 704-05, 721-24, 775-76, 779-80.  Post also reported relief from using Vicodin and Lidoderm patches on occasion as needed for more severe pain, and that he otherwise used over-the-counter medicine like Excedrin.  *See, e.g.,* R. 698, 700, 704, 710, 775.  During this period, although Post had protracted shoulders and some tenderness, Dr. Weinstein found full neck flexion and extension, full right and left cervical rotation, fairly full range of motion at both shoulders, well-preserved strength and sensation in the bilateral upper extremities, and no atrophy in the bilateral upper extremities or reflex abnormalities.  *See* R. 698, 700, 704, 721-24, 779, 775, 1199.  At various times, Dr. Weinstein diagnosed Post with cervicalgia, myalgia and myositis NOS, cervical disc degeneration, spasm of muscle, shoulder impingement syndrome.  R. 1208, 1206, 1202, 1199.  For Post's workers' compensation claim, Dr. Weinstein opined that Post was totally disabled since 2009, when he started seeing him.  *See, e.g.*, R. 564, 704, 763, 850, 1166.

### 3.  Drs. Tolis and Jaeger

From March 2008 through February 2011, Post saw Dr. Arthur Tolis, an internist and Post's primary care provider at Crystal Run Healthcare ("Crystal Run") for various issues, including bilateral shoulder pain, chest pain, depression, and diverticulosis.  R. 524-25, 537, 546-48, 648, 653-

55, 658-62, 730-32, 788-89, 795-98.  On March 27, 2008, a musculoskeletal examination showed no

join pain, swelling or weakness, and a psychiatric evaluation showed no unusual anxiety or

depression, and Post reported feeling well.  R. 546-47.  On January 27, 2009, Dr. Tolis found no

musculoskeletal issues and that Post's extremities appeared normal.  R. 517.  On May 19, 2011, Post

had a follow up with Dr. Tolis regarding his depressive symptoms, and Dr. Tolis noted that he was

"doing well on Cymbalta," "[d]enie[d] side effects on medication," and demonstrated "[n]o unusual

anxiety or evidence of depression."  R. 1252-3.  Dr. Tolis examined Post and found that he had

normal musculature and no skeletal tenderness or joint deformity.  *Id.*

In July 2008, Post saw Dr. David Jaeger, a neurologist at Crystal Run, with complaints of

neck pains that "come and go" and headaches.  R. 528-31.  After a physical examination, Dr. Jaeger

found that Post had an intact gait, was neurologically intact, had normal sensation, and had full

strength in his upper and lower extremities.  R. 530.  Post returned to Dr. Jaeger on March 9, 2009

with complaints of neck pain and headaches that related to stress.  R. 512.  Dr. Jaeger examined Post

and found full strength in his upper extremities and legs, as well as a normal gait.  R. 513-4.

### 4.  *Dr. Michael Miller*

On February 26, 2004, Post had an independent medical examination with Dr. Michael

Miller, an orthopedic surgeon.  R. 485-88.  Dr. Miller opined that Post had a moderate partial

disability, could work full-time and lift up to fifteen pounds, but could not return to his regular

duties as a police officer.  R. 487.  In a supplemental report, dated November 28, 2005, Dr. Miller

opined that Post had a permanent mild partial disability.  R. 476.  Dr. Miller concluded that Post

could work full time with a lifting restriction of 25 pounds.  *Id.*

### 5.  *Dr. Joel Mandel*

In June 2005, Post was examined by Dr. Joel Mandel, an orthopedist, for purposes of

determining his ability to continue employment at his police department.  R. 448-74, 889-890.  Dr.

Mandel found that Post had an intact gait, a mild limitation of motion in his cervical spine, and some tenderness of the left shoulder with pain in all extremes of active and passive range of motion. R. 465-66.  According to Dr. Mandel, Post's "cervical disability is minimal," and Post had full range of motion and grip strength in the left wrist and hand.  R. 467.  However, Dr. Mandel opined that Post's left shoulder disability was permanent and pain producing, and that he could no longer work as a police officer.  R. 470, 474.

### 6.   Dr. Steven Rocker

On May 14, 2008, Post was given an internal medicine examination by Dr. Steven Rocker at the request of the Commissioner.  R. 443-46.  Post reported that he watched television, cooked, cleaned, did laundry, shopped, and took care of his personal needs on a daily basis.  R. 444.  Dr. Rocker examined Post and found that he had full range of motion of his cervical and lumbar spine. R. 445.  He also had full range of motion and full strength in his upper and lower extremities, stable and neurologically intact joints, no muscle atrophy throughout, intact hand and finger dexterity, and full grip strength bilaterally.  *Id.*  Dr. Rocker opined that Post had "no limitation for . . . sitting, handling, standing and walking, [but] as per symptoms, mild to moderate limitation for lifting and carrying."  R. 446.

### 7.   Leslie Helprin, Ph.D.

On January 19, 2011, Post underwent a consultative intelligence and psychiatric evaluation by Leslie Helprin, Ph.D. at the request of the Commissioner.  R. 751-55, 757-60.  Although he complained of depression, Post reported that he was able to care for his personal needs, cook, do laundry, drive, socialize with family, and watch television on a daily basis.  R. 751, 753, 759.  Dr. Helprin opined that Post could follow and understand simple directions and instructions, independently perform simple rote tasks and complex tasks, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, adequately relate with others, and deal

appropriately with stress.  R. 754.  Dr. Helprin further opined that Post had some secondary

psychiatric problems that did not appear to be significant enough to interfere with Post's ability to

function on a daily basis.  R. 754, 759.

### 8.  *Dr. Manouchehr Lavian*

From February to April 2011, Post saw Dr. Manouchehr Lavian, a psychiatrist, for

complaints of depression.  R. 829-34.  During the initial psychiatric evaluation on February 27, 2011,

Post was distracted easily but was fully oriented and had intact memory, good judgment and fair

insight, and no suicidal or homicidal ideation.  R. 832.  Dr. Lavian assessed a Global Assessment of

Functioning of 55, recommended supportive therapy, and prescribed Cymbalta.  R. 832-833.

### 9.  *Dr. Suraj Malhorta*

At the request of the Commissioner, on May 27, 2010, Dr. Suraj Malhotra undertook a

consultative orthopedic examination of Post.  R. 636-39.  Post reported to Dr. Malhorta that he

cooked, cleaned, did laundry, cared for his personal needs, and watched television daily.  R. 637.

After conducting an examination, Dr. Malhorta concluded that Post had an intact gait, intact hand

and finger dexterity, and full grip strength bilaterally.  R. 638.  Post also had full range of motion of

the cervical spine and no trigger points or cervical or paracervical pain or spasm.  *Id.*  He had a mild

limitation of the shoulders bilaterally at 140 degrees of forward flexion and abduction but full

adduction and full internal and external rotation of both shoulders.  *Id.*  Post had full range of

motion of his elbows, forearms, wrists, and fingers bilaterally, full muscle strength, intact reflexes in

the upper extremities, no muscle atrophy, and no sensory abnormalities.  *Id.*  Finally, Post had full

range of motion of the thoracic and lumbar spine and full range of motion and no atrophy of the

lower extremities.  *Id.*  Dr. Malhotra opined that Post had a minimal limitation in his ability to

elevate his arms above shoulder level, bilaterally.  R. 639.  In a medical source statement of ability to

do work related physical activities, dated June 7, 2010, Dr. Malhorta assessed that Post could

continuously lift and carry up to 20 pounds, and that he could sit for eight hours and stand/work for two hours in an eight-hour workday.  R. 640-45.

## II. LEGAL STANDARD

### A. Scope of Judicial Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A determination of the ALJ may be set aside only if it is based on legal error or is not supported by "substantial evidence."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Supreme Court has defined "substantial evidence" in social security cases as "more than a mere scintilla," but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NRLB*, 305 U.S. 197, 229 (1938)).  As the Second Circuit has observed, it is "a very deferential standard of review—even more so than the 'clearly erroneous' standard."  *Brault v. Social Security Administrator*, 683 F.3d 443, 448 (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive.  The Court must not make a *de novo* determination of disability.  *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 1995) ("[W]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.").  This is true even when contrary evidence supports the plaintiff's position.  *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("[W]here there is substantial evidence to support either position, the determination is one to be made by the factfinder."); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998) (affirming ALJ decision where substantial evidence supported both sides).

### B.  Disability Determination

A person is considered disabled for Social Security benefit purposes when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairments must be "of such a severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Social Security Act regulations require the Commissioner to undertake a five-step sequential analysis in making disability determinations.  202 C.F.R. §§ 404.1520, 416.920.  The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Where the claimant is not, the Commissioner next considers whether the claimant has a 'severe impairment' that significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Balsamo v. Chater*, 142 F.3d 75, 79-80 (2d Cir. 1998); 202 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden as to the final step.  *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  The Commissioner must consider the entire record, including any objective medical evidence, medical opinions based on such evidence, subjective evidence of pain or disability, and the

claimant's educational background, age, and work experience.  *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

### C.  ALJ Gonzalez's Application of the Five-Step Sequence to Post's Claim

On July 29, 2013, ALJ Gonzalez issued a written decision denying Post's application for disability insurance benefits, finding that he was not disabled as defined by the Social Security Act from December 31, 2004 through December 31, 2011.  R. 835-853.

At step one, ALJ Gonzalez found that Post had not engaged in substantial gainful employment since December 31, 2004, the alleged onset date.  R. 840.  At step two, ALJ Gonzalez found that Post had the following severe impairments:  hyperlipidemia, left shoulder impingement syndrome, status post right shoulder surgery, cervicalgia, cervical spine degenerative disc disease, myalgia myosisits not otherwise specified, diverticulitis and bilateral carpal tunnel.  R. 840.  At step three, ALJ Gonzalez concluded that Post did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 840.

At step four, ALJ Gonzalez determined that Post has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. Part 401.1567(b), except that he could perform the following activities at most "frequently," i.e., not continuously: reach in all directions with the bilateral upper extremities; flex, extend and rotate his neck; handle and finger bilaterally; and push/pull with the bilateral upper extremities.[2]  R. 843.  In making this determination, ALJ Gonzalez found that Post's statements concerning the intensity, persistence and limiting effects of his impairments were not entirely credible.  R. 843.  Relying on a vocational expert, ALJ Gonzalez

---

[2] Light work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours a day, and sit for up to two hours.  20 C.F.R. § 404.1567(b); Program Policy Statement, Titles II and XVI: Determining Capability To Do Other Work—The Medical–Vocational Rules of Appendix 2, SSR 83–10, 1983 WL 31251, at *5–6.

found that Post's past relevant work was classified as "light" as nationally performed.  R. 852.  ALJ Gonzalez concluded that Post had the RFC to perform his past work as a Police Sergeant.  As such, ALJ Gonzalez did not need to address step five in order to reach his conclusion that Post was not under a disability as defined by the Social Security Act.  R. 853.

## III. DISCUSSION

Post argues that ALJ Gonzalez's decision must be reversed because:  (1) ALJ Gonzalez's RFC assessment is not supported by substantial evidence; (2) ALJ Gonzalez violated the treating physician rule by not granting controlling weight to the opinions of Drs. Episalla and Weinstein; (3) ALJ Gonzalez improperly assessed Post's credibility and failed to evaluate his subjective complaints of pain; and (4) the testimony of the vocational expert relied upon by ALJ Gonzalez is not supported by substantial evidence.  Pl's Mot. at 11–25.  As explained below, none of Post's arguments are well founded.  Furthermore, after a careful review of the administrative record and ALJ Gonzalez's decision, the Court finds that ALJ Gonzalez correctly applied the law, and that his findings are supported by substantial evidence and must be affirmed.

### A.  ALJ Gonzalez's Residual Functional Capacity Assessment is Supported By Substantial Evidence

Post argues that ALJ Gonzalez's RFC determination is not supported by substantial evidence because no medical evidence contained in the record fully supports it.  Pl's Mot. at 18-20.  In assessing the RFC, the ALJ must consider all of the "medically determinable impairments" and "all of the relevant medical and other evidence."  20 C.F.R. §§ 404.1545(a)(2)-(3), 416.945(a)(2)-(3).  Post's argument lacks merit because ALJ Gonzalez's RFC assessment is supported by evidence, including medical evidence.  Moreover, there is substantial evidence that ALJ Gonzalez's RFC assessment properly considered all of Post's medically determinable impairments and the relevant evidence.

11

Post's primary care physicians at Crystal Run, including Drs. Tolis and Jaeger, saw Post frequently over the course of many years, as did Drs. Episalla and Weinstein in connection with his Workers Compensation claim.  As noted by ALJ Gonzalez, treatment notes from those providers and the consultative clinical findings from non-treating sources such as Drs. Rocker, Miller, Mandel and Malhorta, showed that despite his bilateral shoulder and neck and upper back pain, Post consistently had neurologically intact upper extremities with nearly full range of motion and strength, and no muscle atrophy, and that he also had full grip strength bilaterally.  R. 840-52.  ALJ Gonzalez also correctly noted the absence of any objective findings showing any limitation relating to Post's lower extremities, including his ability to stand or walk.  R. 852.  Post consistently had an intact gait and nearly full to full range of motion in his neck.  *See, e.g.*, R.  444-45, 514-17, 649-50, 729-30, 1252.  The medical opinions of Dr. Malhotra, Dr. Rocker, and Dr. Miller provide substantial evidence for the ALJ's determination of Post's lifting, standing, walking, and range of motion limitations.  R. 852.  Moreover, there is substantial evidence in Post's activities of daily living that suggest he is capable of "light work."  *See, e.g.*, R. 637, 753, 759, 771, 765, 761, 852, 1183.

Post also contends that ALJ Gonzalez's RFC determination was erroneous because it failed to incorporate evidence in the record that Post suffers from depression.  Pl's. Mot. at 21.  However, substantial evidence supports ALJ Gonzalez's decision to exclude Post's mental limitations in the RFC.  Post himself testified that his depression had improved over time with medication and did not preclude his ability to work.  R. 70-71, 104-05, 901.  Moreover, a number of psychiatric evaluations indicated that Post showed an appropriate mood and affect and was doing well on Cymbalta. *See, e.g.,* R. 829-34, 1278, 1280-81.  Therefore, there is substantial evidence to support the ALJ's decision to give "great weight" to Dr. Helprin's consultative opinion that Post's psychological issues were not significant enough to interfere with his daily functioning.  R. 852.

And finally, Post argues that ALJ Gonzalez's RFC determination was flawed because the ALJ did not provide a "function-by-function" assessment of Post's ability to do sustained work-related physical and mental activities. Pl.'s Mot. at 21. There is no legal basis for Post's claim. The Second Circuit has not held that an ALJ must conduct a function-by-function assessment. *Cruz v. Astrue*, 941 F. Supp. 2d 483, 498 (S.D.N.Y. 2013), appeal dismissed (Aug. 1, 2013); *Daniels v. Astrue*, No. 10-cv-6510, 2012 WL 1415322, at *12 (S.D.N.Y. Apr. 18, 2012); *Diaz v. Astrue*, No. 9-cv-6243, 2010 WL 3257779, at *9 (S.D.N.Y. Aug. 17, 2010). Instead, it is enough for the ALJ to "explain how the evidence supports his or her conclusions about the claimant's limitations and [to] discuss the claimant's ability to perform sustained work activities." *Casino–Ortiz v. Astrue*, No. 6-cv-0155, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007) (internal citations and quotation marks omitted). As explained above, ALJ Gonzalez thoroughly discussed Post's functional work-related abilities and explained his reasons for arriving at his assessment of those abilities.

## B. ALJ Gonzalez Did Not Violate the Treating Physician Rule

Post contends that ALJ Gonzalez committed a legal error because he failed to accord controlling weight to the opinions of Drs. Episalla and Weinstein, two of Post's treating physicians. ALJ Gonzalez gave Dr. Episalla's and Dr. Weinstein's opinions that the Post is "totally disabled" "very little weight." R. 850-51. A treating physician's opinion is accorded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 404.1527(d)(2). Nevertheless, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999). Unlike a medical opinion regarding the nature and severity of an individual's impairments, which may be entitled to controlling or great weight, the Commissioner need not grant "controlling weight" to a medical source's opinion as to the ultimate issue of disability, which is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Snell,* 177

F.3d at 133.  It is the Commissioner who is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(e)(1).

Substantial evidence supports ALJ Gonzalez's decision to give Dr. Episalla's and Dr. Weinstein's disability opinions "very little weight."  As an initial matter, ALJ Gonzalez correctly noted that these opinions were on an issue reserved to the Commissioner.  R. 851; *see, e.g., Micheli v. Astrue*, 501 Fed.Appx. 26, 28–29 (2d Cir. 2012) ("Nevertheless, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'  It is the Commissioner who is 'responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability.' ") (citation omitted)); *Snell*, 177 F.3d at 133 ( "[S]ome kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are 'reserved to the Commissioner.'  That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative.") (citation omitted)); *Karle v. Astrue*, No. 12-civ-3933, 2013 WL 2158474 at *16 (S.D.N.Y. May 17, 2013) ("[T]he treating physician's opinion on disability is not given any special significance.") (citation omitted)).

ALJ Gonzalez also correctly observed that these opinions were not instructive because they were given in the context of a Workers' Compensation claim.  R. 850; *see, e.g., Alves v. Colvin*, No. 13-civ-3898, 2014 WL 4827886, at *9-10 (S.D.N.Y. Sept. 29, 2014) ("[A]n opinion rendered in the context of a Workers' Compensation claim is not instructive with respect to a claim under the Act."); *Gillespie v. Astrue*, No. 9–civ–2198, 2012 WL 3646820 at * 13 (E.D.N.Y. Aug. 23, 2012) ("Plaintiff's treating physicians opined that he was disabled with regard to workers' compensation.  However, those determinations are not dispositive, because the standards for workers'

compensation are different than those under the Act."); *Lefever v. Astrue*, No. 7–civ-622, 2010 WL 3909487 at *13 (N.D.N.Y. Sept. 30, 2010) ("Workers' compensation determinations are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.  Because disability for purposes of workers' compensation benefits is determined under a different standard than the standard used in the Social Security context, the ALJ is not bound to afford [the treating physician's] finding controlling weight." (citation omitted)), *aff'd*, 443 Fed.Appx. 608 (2d Cir. 2011)).

In any event, ALJ Gonzalez correctly noted that Dr. Episalla's and Dr. Weinstein's opinions of total disability are inconsistent with totality of the evidence on the record, including clinical findings, consultative examinations, Post's activities of daily living, and even some of Dr. Episalla's and Dr. Weinstein's own treatment notes.  R. 850-1.  A number of Dr. Episalla's and Dr. Weinstein's treatment notes show that Post had fairly full range of motion at both shoulders, well-preserved strength and sensation in the bilateral upper extremities, was effectively at managing his pain, and was independent in all activities of daily life.  R. 698, 700, 712-13, 714-15, 771, 765, 1205. In these circumstances, Dr. Episalla's and Dr. Weinstein's opinions that Post was fully disabled are "inconsistent with the other substantial [record] evidence" and as such should not be given controlling weight.  20 C.F.R. § 404.1527(d)(2).

### C. ALJ Gonzalez Properly Assessed Post's Credibility

Post argues that ALJ Gonzalez erred in assessing his credibility and in failing to credit his subjective complaints of pain.  Assessment of a claimant's credibility with respect to subjective complaints of pain involves a two-step process.  Where a claimant complains that he or she is limited by pain, the ALJ is required, first, to determine whether the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the pain alleged."  20 C.F.R. § 416.929(c)(1).  Assuming the ALJ finds such an impairment, then the ALJ

must take the second step of evaluating the intensity and persistence of the claimant's symptoms. *Id.; see also Meadors v. Astrue*, 370 Fed.Appx. 179, 183 (2d Cir. 2000). This must be done by considering all of the available evidence, and where, "the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry" to determine the extent to which the claimant's symptoms affect his or her ability to do basic work activities. *Meadors,* 370 Fed.Appx. at 183. The ALJ should consider a number of factors in the credibility inquiry, including:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Id.* at 184, n.1 (citing § 404.1529(c)(3)(i)–(vii)).

> In this case, ALJ Gonzalez applied the two-step analysis. He started by explaining:

> The claimant stated that he is disabled because a left torn and repaired rotator cuff, with loss of strength and range of motion limits his ability to work. He further stated that any repair and injury to the same has reduced his strength and range of motion. […] After careful consideration of the evidence, the undersigned finds that the claimant's medically determined impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 843.

Post takes issue with ALJ Gonzalez's finding at step two because "the ALJ improperly substitutes his own opinion for that of a competent medical opinion and does not address Mr. Post's testimony at all." *Id.* at 16. However, Post's arguments are at odds with the careful credibility inquiry done by ALJ Gonzalez in his decision, which includes a discussion of objective medical evidence and Post's testimony. R. 843-4, 849-850. Although "the record is replete with instances where Mr. Post complained to treating and examining physicians' alike of pain. […] [And] at each of

his administrative hearings, Mr. Post testified that he experiences pain . . . ." (Pl.'s Mot. at 17.), ALJ Gonzalez's credibility determination is supported by sufficient evidence.  In his credibility analysis, ALJ Gonzalez considered Post's daily activities, the type, effectiveness, and side effects of the medications and other treatments he took to alleviate the pain, and his personal observations of Post during the hearing.  R. 843-850.  ALJ Gonzalez came to a number of findings that properly supported his credibility determination.

First, he found that Post's ability to perform certain daily activities belied his claim of total disability.  R. 849.  Moreover, Post's reported activities demonstrated an ability that was consistent with Dr. Malhotra's assessment of Post's ability to do work-related reaching and lifting.  R. 849.  Although Post alleged that this pain was continuous and prevented him from concentrating on tasks, he reported being able to perform a multitude of activities, including driving, walking up to a mile, doing yard work for at least one hour straight, cooking, cleaning, vacuuming, ironing, doing laundry, driving, shopping, socializing, dining out, watching television, and taking care of his personal needs.  *See, e.g.,* R. 99-100, 352-61, 444, 514, 522-23, 530, 537-38, 546-47, 637, 649-50, 659, 661, 729-30, 753, 759, 763, 767, 773, 788, 1218.

Second, ALJ Gonzalez noted that, although Post received treatment for allegedly disabling impairments, much of his treatment has been routine or conservative in nature.  Moreover, the examinations of Dr. Episalla and Dr. Weinstein demonstrated that over time Post's pain had improved with treatment.  R. 850.  Additionally, at certain times, Post had refused to use Vicodin to alleviate his pain, even though he did not report any significant side effects while using the medication.  R. 849-50, 717-18, 761-62, 1197.

Finally, ALJ Gonzalez gave "some slight weight" to his observation that Post did not appear to be suffering from debilitating symptoms during the hearing.  R. 850.  *See, e.g., Alves*, 2014 WL

4827886, at *11 (find that the ALJ's decision to not fully credit plaintiff's complaints of pain and other limitations was supported by ALJ's observations of plaintiff during the hearing).

In sum, ALJ Gonzalez's credibility findings are supported by substantial evidence and must be confirmed.

### D. ALJ Gonzalez Properly Relied on the Testimony of the Vocational Expert

Post argues that the testimony of the Vocational Expert (VE) relied upon by ALJ Gonzalez is not supported by substantial evidence. Post suggests that ALJ Gonzalez failed to consider all medically determinable impairments in assessing the RFC and that he posed improperly constructed hypothetical questions to the VE. Pl's. Mot. at 22-24. As explained above, there is substantial evidence that ALJ Gonzalez's RFC assessment took into account all of Post's physical and mental impairments. Moreover, the Court finds nothing improper, incomplete, or confusing about the hypothetical questions that ALJ Gonzalez posed to the VE. R. 874. ALJ Gonzalez's hypothetical questions simply used his RFC assessment. Because there was no error in ALJ Gonzalez's RFC assessment, the ALJ did not err in posing hypothetical questions to the vocational expert that was based on that assessment. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983). Assuming an individual with the same age, education and work experience as Post with the RFC described by the ALJ, the VE testified that such an individual would be able to perform the requirements of Post's former job as a Police Sergeant as it was generally performed in the national economy. R. 874. Accordingly, there is substantial evidence to support ALJ Gonzalez's conclusion that Post could perform his past relevant work as a Police Sergeant as generally performed.

## IV.  CONCLUSION

For the reasons discussed above, the Commissioner's determination that Post was not disabled within the meaning of the Social Security Act during the period from December 31, 2004 through December 31, 2011 is supported by substantial evidence. Accordingly, Post's motion for

judgment on the pleadings is DENIED, and the Commissioner's cross-motion for judgment on the pleadings is GRANTED.

The Clerk of Court is instructed to terminate the motions pending at docket numbers 22 and 27, and close the case.

Dated:  March 31, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge